# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES PETER INGEGNO and JERRY HAMMOND,<br><br>Plaintiffs,<br><br>v.<br><br>PRUCO LIFE INSURANCE COMPANY,<br><br>Defendant. | Case No.: 3:20-cv-00385-H-KSC<br><br>**ORDER GRANTING DEFENDANT PRUCO LIFE INSURANCE COMPANY'S MOTION TO DISMISS WITHOUT PREJUDICE**<br><br>[Doc. No. 4.] |

On February 28, 2020, Plaintiffs James Peter Ingegno and Jerry Hammond filed a complaint alleging that Defendant Pruco Life Insurance Company breached the terms of a life insurance agreement and breached the implied covenant of good faith and fair dealing. (Doc. No. 1.)  On March 26, 2020, Defendant filed a motion to dismiss.  (Doc. No. 4.) Plaintiffs filed their opposition to Defendant's motion on April 13, 2020 (Doc. No. 5), and Defendant filed a reply on April 20, 2020.  (Doc. No. 6.)  The Court held a hearing on the motion on April 27, 2020.  Glenn R. Kantor appeared for Plaintiffs.  Andrew S. Azarmi and Kelly Ryan Graf appeared for Defendant.  For the reasons below, the Court grants Defendant's motion to dismiss without prejudice.

## Background[1]

Effective June 28, 2019, Defendant Pruco Life Insurance Company ("Defendant") issued Nicolas Artimero Avila an Individual Term Life Insurance Policy, policy number L9833366 (the "Policy"), and delivered it to him in Imperial County, California.  (Doc.

---

[1]  The following facts are taken from the allegations in Plaintiff's complaint.  (See Doc. No. 1.)

No. 1, Ex. 6.)  The Policy insured Avila's life for $2,000,000, naming his business partner, James Peter Ingegno, and Ingegno's godson, Jerry Hammond (collectively, "Plaintiffs"), as the beneficiaries.  (Id. ¶ 13 & Ex. 6.)  Three weeks later, on July 22, 2019, Avila allegedly died during a hike in Mexico.  (Id. ¶¶ 17, 19.)  On August 23, 2019, Plaintiff Ingegno submitted a claim to Defendant for the $2,000,000 in benefits under the Policy.  (Id. ¶ 20.)  Defendant acknowledged receipt of the claim but stated that it was investigating the factual circumstances surrounding the claim.  (Id. ¶ 29.)

In late September 2019, one of Defendant's investigators, Daniel Ortega, sent Plaintiff Ingegno a letter requesting that Plaintiff Ingegno authorize the release of Avila's medical records.  (Id. ¶ 21.)  On October 9, 2019, Plaintiff Ingegno and Ortega exchanged emails regarding the release of Avila's medical records and the date and location where Avila applied for the Policy.  (Id. ¶¶ 22–24.)  A few days later, Plaintiff Ingegno and Ortega spoke over phone.  (Id. ¶ 24.)  On October 16, 2019, Plaintiff Ingegno emailed Ortega requesting an update on Defendant's investigation of Plaintiffs' claim for benefits.  (Id. ¶ 27.)  On October 19, 2019, Plaintiff Ingegno sent another follow up email to Ortega.  (Id. ¶ 28.)

On December 11, 2019, Plaintiff Ingegno filed a complaint in the Southern District of California.  (Id. ¶ 31.)  That action incorrectly named The Prudential Life Insurance Company of America as the company issuing the disputed insurance policy, and the case was dismissed without prejudice.  (Id.)  On February 28, 2020, Plaintiffs filed the complaint in this action, alleging that Defendant breached the terms of the Policy and breached the implied covenant of good faith and fair dealing.  (Id.)  On March 26, 2020, Defendant filed a motion to dismiss, arguing that this case should be dismissed because Defendant has not yet issued a decision on whether it would grant or deny Plaintiffs' claim for benefits. (Doc. No. 4.)  Defendant argued that further investigation was necessary before issuing a decision because the insured had died only three weeks after the Policy issued, had died in a foreign country, and because Plaintiffs and the insured had little history to document their relationship as business partners in a venture that had purportedly begun just three months

before the insured had passed away.  (Id.)

## Discussion

### I. Legal Standards

Under Federal Rule of Civil Procedure 12(b)(1), a complaint may be dismissed for lack of subject matter jurisdiction.  Federal courts are courts of limited jurisdiction, possessing only the power given to them by Constitution and by statute.  See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  Federal courts are presumed to lack jurisdiction.  See id.  The party invoking federal jurisdiction bears the burden of establishing jurisdiction.  United States ex rel. Solis v. Millennium Pharm., Inc., 885 F.3d 623, 625 (9th Cir. 2018).

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted.  A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555 (citation omitted).  In addition, a court need not accept legal conclusions as true.  Iqbal, 556 U.S. at 678.  Further, it is improper for a court to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged."  Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).  Finally, a court may consider documents incorporated into the complaint by reference and items that are proper subjects of judicial notice.  See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010).

If the court dismisses a complaint, it must then determine whether to grant leave to amend.  See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).  "A district court may deny a plaintiff leave to amend if it determines that allegation of other facts consistent with

the challenged pleading could not possibly cure the deficiency, or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies." Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010) (internal quotation marks and citations omitted).

**A.     Analysis**

    **A.     Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Defendant contends that this action should be dismissed for lack of subject matter jurisdiction because Defendant has not denied Plaintiffs' claim for benefits. (Doc. No. 4-1 at 5–7.) According to Defendant, this means Plaintiffs' claim is not yet ripe for federal adjudication. (Id.) The Court disagrees.

Article III of the U.S. Constitution limits the jurisdiction of federal courts to live "cases" or "controversies." U.S. Const. art. III, § 2. Under these limits, federal courts may exercise jurisdiction over a case only when the case is ripe for adjudication. Ripeness is "peculiarly a question of timing," designed to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Clark v. City of Seattle, 899 F.3d 802, 808 (9th Cir. 2018) (internal citations and quotation marks omitted). Because the doctrine of ripeness derives from "both Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction," the "ripeness inquiry" involves "both a constitutional and a prudential component." Safer Chemicals, Healthy Families v. U.S. Envtl. Prot. Agency, 943 F.3d 397, 411 (9th Cir. 2019) (internal citations and quotation marks omitted).

"The constitutional component of the ripeness inquiry is often treated under the rubric of standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong." Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1138 (9th Cir. 2000). To establish injury in fact, a plaintiff "must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016), as revised (May 24, 2016) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560

(1992)). Here, Defendant essentially claims that Plaintiffs have not yet suffered any injury in fact because Defendant has not formally denied Plaintiffs any insurance benefits.

But Plaintiffs do not allege that Defendant will, at some point, formally deny Plaintiffs' claim for insurance benefits. Rather, Plaintiffs allege that Defendant has constructively denied Plaintiffs' claim by acting in bad faith and unreasonably delaying Defendant's investigation. (Doc. No. 1 ¶¶ 26–30, 33–35, 38.) An unreasonable delay in the payment of benefits counts as an injury in fact. <u>McCormick v. Sentinel Life Insurance Company</u> explains,

> the considerations involved in imposing liability on an insurer for unreasonably and in bad faith denying coverage under a policy . . . recognize the purpose of purchasing insurance—ensuring that the insured will be protected against losses incident to a disability or other catastrophe. . . .
>
> As we also explained earlier, as a consequence of [an insurer's] delay in processing [the insured's] claim, the insured was exposed to the very risk which he purchased insurance to guard against.

200 Cal. Rptr. 732, 744 (Cal. Ct. App. 1984). Thus, "in many cases, a lengthy delay in resolving a claim for insurance benefits will have the identical consequence for the insured as an outright denial of benefits." <u>Id.</u>; <u>see also</u> <u>Flintkote Co. v. Gen. Acc. Assur. Co. of Canada</u>, 480 F. Supp. 2d 1167, 1176 (N.D. Cal. 2007) ("While Aviva never explicitly denied claims prior to 1996, its decision to 'not respond[] to [Flintkote's] notice documentation' is, for the purpose of waiver, the same as denying coverage."). Here, Plaintiffs allege that Plaintiff Ingegno entered into the Policy to safeguard against the risk of losing his business partner in their joint venture. (Doc. No. 1 ¶¶ 6–14.) Now that his business partner has passed away, Plaintiffs allege that Defendant's delay has deprived Plaintiffs of the insurance benefits meant to secure them against the loss of Plaintiff Ingegno's partner and that partner's investments. (<u>Id.</u>) Consequently, Plaintiff has alleged a cognizable injury in fact. Accordingly, the constitutional component of ripeness does not bar the Court's exercise of jurisdiction in this case.

Nor do the prudential factors for ripeness prevent this Court from exercising

jurisdiction. Defendant cites the prudential factors for ripeness introduced in <u>Abbott Laboratories v. Gardner</u>, 387 U.S. 136, 153 (1967), arguing that the case is not fit for judicial decision and that withholding court consideration would not cause hardship to the parties. (Doc. No. 4-1 at 6–7.) However, courts in the Ninth Circuit do not apply the <u>Abbott Laboratories</u> factors to private contract disputes. <u>Principal Life Insurance Company v. Robinson</u> explains that the <u>Abbott Laboratories</u> factors arose in the administrative law context and were compelled by specific concerns about judicial entanglement in administrative agency actions. 394 F.3d 665, 670–71 (9th Cir. 2005). Where, however, "[t]he decisive issue . . . is one of ordinary contract law . . . we do not consider the 'prudential' factors outlined in *Abbott Laboratories* and its progeny to assess this case's ripeness." <u>Golden v. California Emergency Physicians Med. Grp.</u>, 782 F.3d 1083, 1087 (9th Cir. 2015).

Instead, "the appropriate standard for determining ripeness of private party contract disputes" is "whether 'there is sufficient controversy, between parties having adverse legal interests, of sufficient immediacy and reality . . . .'" <u>Principal Life Insurance</u>, 394 F.3d at 671. "[W]hen a litigant resists his adversary's attempts to enforce a contract against him, the dispute has already completely materialized." <u>Golden</u>, 782 F.3d at 1087. Here, Plaintiffs allege that Defendant is unreasonably delaying the processing of Plaintiffs' claims for benefits under the Policy. (Doc. No. 1 ¶¶ 26–30, 33–35, 38.) These allegations present an immediate controversy between parties with adverse legal interests for the Court to adjudicate. Thus, the Court declines to dismiss the complaint on jurisdictional grounds.

**B.     Motion to Dismiss for Failure to State a Claim**

**i.     Breach of Contract**

Defendant argues that Plaintiffs fail to state a claim for breach of contract because Plaintiff does not identify any provision of the Policy that Defendant purportedly breached. (Doc. No. 4-1 at 8.) Plaintiffs contend that they do allege a breach of contract, since they allege Defendant's withholding of payment, despite the Policy's promise of prompt payment upon submitting a proof of claim. (Doc. No. 8 at 10.) The Court agrees with

Defendant.

The interpretation of an insurance policy is a question of law.[2]  Hartford Cas. Ins. Co. v. Swift Distribution, Inc., 326 P.3d 253, 259 (Cal. 2014).  Such interpretation must give effect to "the mutual intention of the parties at the time the contract is formed . . . ." Waller v. Truck Ins. Exch., Inc., 900 P.2d 619, 627 (Cal. 1995).  To determine the intent of the parties behind an insurance contract, the Court "look[s] first to the language of the contract in order to ascertain its plain meaning," reading the language in its "ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage." Id. (internal citations and quotation marks omitted).  A policy's provisions "will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." Id.  But language in an insurance contract "must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." Id.  Courts "will not strain to create an ambiguity where none exists." Id.

Defendant's conduct does not breach any express provision of the Policy.  The Policy states that Defendant "will pay the beneficiary the death benefit described in this contract promptly if [Defendant] receive[s] due proof that the Insured died in the term period." (Doc. No. 1, Ex. 6.)  For Plaintiffs, that sentence ends the discussion.  But the Policy does not end there.  It promises payment of "the death benefit described in this contract," meaning that promise is subject to any additional limitations in the Policy.  (Id.) The Policy later provides an incontestability clause that states:

> Except for non-payment of premium, we will not contest this contract after it has been in force during the Insured's lifetime for two years from the issue date.  The contract will be contestable for two years from the date of reinstatement during the lifetime of the insured for information contained in the application for a reinstatement.

---

[2]  In this diversity action, the law of the forum state, California, governs interpretation of the insurance policy.  See Bell Lavalin, Inc. v. Simcoe & Erie Gen. Ins. Co., 61 F.3d 742, 745 (9th Cir. 1995).

(Id. at 5.) While the Policy states that Defendant will not contest a claim under the Policy if the Policy has been in force for two or more years, the flip side of this is that the Policy "will be contestable" by Defendant within that two-year period. See Amex Life Assurance Co. v. Superior Court, 930 P.2d 1264, 1267 (Cal. 1997) ("[Incontestability] clauses are designed 'to require the insurer to investigate and act with reasonable promptness if it wishes to deny liability on the ground of false representation or warranty by the insured.'" (quoting G. Couch, 18 Couch on Insurance § 72.2 at 283 (1983)). Moreover, the Policy does not impose a specific timeline for the length of an investigation within the contestability period. Thus, Defendant has not breached any provision in the Policy, since the Policy expressly permits Defendant to investigate Plaintiffs' claim. As a result, Plaintiffs fail to state a claim for breach of contract.

### ii. Breach of Implied Covenant of Good Faith and Fair Dealing

Additionally, Plaintiffs allege that Defendant is unreasonably delaying the processing of Plaintiffs' claim, violating the implied covenant of good faith and fair dealing. (Doc. No. 1 ¶¶ 26, 29–30.) Defendant claims that Plaintiffs fail to state a claim for breach of the implied covenant of good faith and fair dealing because such a claim requires an underlying breach of contract, and Defendant argues that no underlying breach happened here. (Doc. No. 4-1 at 8–9.)

Plaintiffs do not plead facts sufficient to state a claim for breach of the implied covenant of good faith and fair dealing. The covenant of good faith and fair dealing "is implied as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." Love v. Fire Ins. Exch., 271 Cal. Rptr. 246, 256 (Cal. Ct. App. 1990) (emphasis in original). In insurance cases,

> "delayed payment based on inadequate or tardy investigations, oppressive conduct by claims adjusters seeking to reduce the amounts legitimately payable and numerous other tactics may breach the implied covenant because" they frustrate the insured's right to receive the benefits of the contract in "prompt compensation for

losses."

Waller v. Truck Ins. Exch., Inc., 900 P.2d 619, 639 (Cal. 1995), as modified on denial of reh'g (Oct. 26, 1995) (quoting Love v. Fire Ins. Exch., 271 Cal. Rptr. 246, 256 (Cal. Ct. App. 1990)); see also McCormick, 200 Cal. Rptr. at 744.  Here, however, Defendant is not acting in bad faith by investigating Plaintiffs' claim.  California law requires insurers to conduct a thorough investigation, since "an insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial."  Egan v. Mut. of Omaha Ins. Co., 620 P.2d 141, 145–46 (Cal. 1979).  And as stated above, Defendant is entitled to investigate Plaintiffs' claim under the terms of the Policy. (Doc. No. 1, Ex. 6 at 5.)  In this case, Plaintiffs submitted a claim for $2,000,000 in benefits only three weeks after the Policy issued.  (Doc. No. 1 ¶¶ 13–14, 20.)  Further, the Policy was created to insure a business partner for a new venture in a foreign country, and the insured died while in a foreign country.  (Id. ¶¶ 6–20.)  Under these circumstances, Defendant has not conducted its investigation in bad faith.

Plaintiffs argue that Defendant is acting in bad faith because Defendant purportedly kept Plaintiffs in the dark on the status of the investigation.  Specifically, Plaintiffs state that "[t]he October 19, 2019 e-mail from Mr. Ingegno to Mr. Ortega was . . . the last substantive communication between Pruco Life and Mr. Ingegno prior to the initiation of this litigation" on December 11, 2019.  (Doc. No. 1 ¶ 28.)  Plaintiffs further allege that "[o]n December 11, 2019, having received no definite response, estimated timeframe within which to receive a response, or an actual response to the ongoing claims investigation, Plaintiff had no other recourse other than to initiate litigation."  (Id. ¶ 31.)

But these allegations are contradicted by a letter Plaintiffs incorporated into the complaint.[3]  The letter from Defendant to Plaintiffs, dated December 6, 2019, informs

---

[3]  On a motion to dismiss, the Court may consider documents where "the content of the documents are alleged in the complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevant."  Coto Settlement, 593 F.3d at 1038.  Here, Plaintiffs have incorporated the content of Defendant's letter to Plaintiffs in the complaint (Doc. No. 1 ¶¶ 30), and where the content of

Plaintiffs that Defendant is "currently investigating Mr. Avila's death in Mexico" and "will contact [Plaintiffs] again within four weeks with an update on [their] claim." (Doc. No. 1, Ex. 11.)  Additionally, the letter references a prior letter Defendant sent to Plaintiff on November 8, 2019. (Id.) Thus, Defendant had been communicating with Plaintiff and had provided a definite timeline for when Defendant would provide its next update. Accordingly, Plaintiffs do not allege facts sufficient to show that Defendant acted improperly in its investigation. Consequently, the Court grants Defendant's motion to dismiss Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.[4]

## Conclusion

For the foregoing reasons, the Court grants Defendant's motion to dismiss without prejudice. The Court will permit Plaintiffs to file an amended complaint that addresses the deficiencies identified in this order. However, Plaintiffs should note that the Court will grant future opportunities to amend only if Plaintiffs could "possibly cure the deficiency." See Telesaurus, 623 F.3d at 1003. The Court grants Plaintiffs leave to file an amended complaint on or before **July 27, 2020**.

**IT IS SO ORDERED.**

DATED: May 1, 2020

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

---

the letter contradicts Plaintiffs' allegations, the Court need not accept those allegations as true. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

[4]   Because the Court grants Defendant's motion to dismiss Plaintiffs' breach of contract and breach of implied contract claims for failure to state a claim, the Court need not address Defendant's final argument that Plaintiffs fail to allege damages. (See Doc. No. 4-1 at 9–11.)